THE STOCK YARDS BANK *v.* SEAL, D. B. A. C. C. SEAL & CO.

(Decided October 3, 1927.)

*Mr. Roy Monogue, Mr. Wm. J. Rielly* and *Mr.' John C. Hermann,* for plaintiff in error.

*Mr. Walter K. Sibbald* and *Mr. Edward T. Dixon,* for defendant in error.

CUSHING, J.   Christ C. Seal, in December, 1924, was engaged in the business of buying and selling live stock at the Cincinnati Union Stockyards, under the name of C. C. Seal & Co.   He had an account with the Stock Yards Bank.   In that month, a controversy arose between the bank and Seal with reference to his account.   He subsequently brought an action against the bank, as he claims, for its refusal to pay five checks drawn by him.'

December 18, 1924, the president of the bank and several of the directors, at an informal meeting, conferred with Seal as to the status of his account. He was advised that on account of numerous overdrafts his account was not satisfactory to the bank.

Seal, between December 17th and December 21st, drew and mailed a number of checks on his account. Monday, December 22d, Seal's account was credited with $289.93 cash.   On December 20th, he drew and

sent to the bank three drafts, one on Chicago, one on Wilmington, Del., and one on Philadelphia, aggregating $7,710.77. The bank claims that these drafts were entered in his passbook for collection, and he was so notified on arriving at his office, Monday morning, December 22d. His contention in this case is that at the conference on December 18th the bank agreed to give him credit for said drafts.

December 22d the bank returned five checks drawn by Seal on his account, marked "Not sufficient funds."

This action was filed in January, 1925, against the bank. The petition stated that on December 20, 1924, he had on deposit in his account in the defendant bank, and available in the regular course of business of said bank, for the payment of such checks as plaintiff might draw against said deposit, a sum in excess of $7,800.

On the second day of the trial, plaintiff, by leave of court, filed an amended petition, stating that on the 20th day of December, 1924, he had deposits and credits with said bank in excess of $7,800, and that on Monday, December 22d, the bank willfully and maliciously failed, refused, and neglected to honor and pay out of said funds and credits, on deposit to plaintiff's credit in said bank, checks previously drawn by plaintiff and presented to said bank for payment in a sum amounting to about $6,900.

The answer admitted the presentation and the refusal to pay said checks, and states that the plaintiff at that time did not have to his credit in said bank account a sum sufficient to pay said checks, and denied generally all other allegations of the amended petition.

Judgment was entered on the verdict in favor of Seal, and this action is prosecuted to reverse that judgment.

The questions of law are:

Did the amended petition state a cause of action for a breach of a contract, or an action in tort?

Did the court err in admitting evidence of a controversy between Dater and Seal over the sale of one hog, which sale was made by Dater to Seal in his business as a dealer in live stock, at the Cincinnati Union Stockyards, and in admitting evidence as against the bank of what Dater said as president or head of the Stockyards Exchange to the secretary of that exchange about having Seal "posted" as a member of said exchange?

Did the court err in its charge to the jury?

It is not important, except for the purpose of retrial, to determine whether the action as stated in the petition and amended petition was in contract or in tort.

The original petition stated that plaintiff had on deposit a sum in excess of $7,800, and that the bank willfully and maliciously failed, refused, and neglected to honor and pay out of said funds on deposit to plaintiff's credit in said bank checks previously drawn by plaintiff and presented for payment.

The only claim made was that he had a deposit with said bank. "Deposit," as used in Section 710-117, General Code, means the bailment of money to be kept for the depositor, without reward, and returned when he shall require it.

The record is that Seal had only $289.93 on deposit at the time the checks in question were presented for payment.

There were no statements in the original petition, other than that the bank willfully and maliciously failed and refused to pay said checks, that would justify the claim that the bank was guilty of negligence. *Hilsinger* v. *Trickett,* 86 Ohio St., 286, 99 N. E., 305, Ann. Cas., 1913D, 421. The bank was charged with the duty, where a deposit had been made, of holding and paying on demand the deposit that plaintiff had with it.

The amended petition states that plaintiff had with said bank "deposits and credits." This was denied by the answer.

The plaintiff, not having a deposit sufficient to pay the smallest of the five checks in question, we must then look to the claim that he had credits with which to pay said checks.

A credit, among other things, is a debt due in consequence of a contract for borrowing money.

The claim in this case is that the bank had agreed to cash the three drafts above referred to. That means that the plaintiff claims that the bank agreed to lend money on these drafts.

Section 710-136, General Code, authorizes banks to lend money on such instruments. The language of the statute is:

"Commercial banks may loan money upon * * * drafts, bills of exchange, trade and bank acceptances, and other evidences of debt."

This brings us to the question of whether the action was for a breach of contract or an action in tort.

Many actions have been brought against banks for refusal to pay checks. Some of such actions have been in contract and some in tort. The question as

to the nature of the action is discussed in *Smith's Cash Store* v. *First Nat. Bank of San Francisco,* 149 Cal., 32, 84 P., 663, 5 L. R. A., N. S., 870.

An action in tort may be filed when the depositor has in bank sufficient funds — cash — to meet the checks drawn by him. When such is the case, if he be a trader, he may sue in tort, as the refusal to pay the money that he has on deposit may, and undoubtedly would, affect his credit.

Another line of cases holds that, where a depositor in a bank relies on credits, and credit is not given, or is withdrawn, the bank may be liable for a breach of its contract.

The amended petition stated an action based on deposits and credits, but, as pointed out, the money on deposit was less than $300, and the smallest of the five checks drawn against his account was for $805.67.

It is clear that Seal relied for the payment of these checks on a credit with the bank. The contract for credit, if any, was made on December 18, but, as the court held that this was an action in tort, it did not define contract, nor submit the question as to whether there was a contract between the parties to the jury. But, if there was such a contract entered into, the bank would be liable only for a breach of it, unless the petition stated facts showing malice, or some breach of duty that the bank owed the plaintiff, or that it had some ulterior motive for refusing or withdrawing credit. In the absence of such statement, our conclusion is that the action was for a breach of contract, and not in tort. The court therefore erred in its charge to the jury.

The court also erred in the admission of evidence

on the question of malice, and in its charge to the jury on that subject.

Charles H. Dater, referred to above, occupied three positions. He was president of the defendant bank. He owned, or was the head of, a company at the Cincinnati Stockyards, engaged in dealing in live stock, and he was president of the Stockyards Exchange.

The court admitted evidence, as against the bank, of a controversy between Dater and Seal, growing out of the sale to Seal of one hog, by one of Dater's employees, and also admitted evidence of what Dater, as president of the Stockyards Exchange, said to the secretary of that organization about Seal, and about having him "posted" under its rules.

These acts of Dater's were not admissible against the bank to show malice, or to charge it with punitive damages, unless they were done by authority of the bank, or were ratified by it.

Punitive damages can only be awarded against one who has participated in an offense. A principal is liable only for injuries done within the scope of the agent's business, but cannot be held liable for exemplary or punitive damages by reason of wanton, oppressive, or malicious conduct or intent on the part of the agent. An employer cannot be punished for the personal guilt of his servant or agent, unless the employer authorized, ratified, or participated in the wrongdoing. *Tracy* v. *Athens & Pomeroy Coal & Land Co.*, 115 Ohio St., 298, 152 N. E., 641. The record is that certain of the directors of the bank, at an informal meeting on December 18th, discussed with Seal the unsatisfactory condition of his ac-

count, the condition precedent to its giving credit on any drafts.

Dater's action in his private business, and as president of the Stockyards Exchange, cannot be charged to the bank, unless, as pointed out, the bank either authorized, ratified, or participated in the wrongdoing. In the absence of evidence tending to connect the bank with these matters, it was prejudicial error for the court to admit the evidence and charge the jury as it did in these matters.

For the reasons stated, the judgment of the trial court will be reversed, and the cause remanded for proceedings according to law.

*Judgment reversed, and cause remanded.*

HAMILTON, P. J., concurring. I concur in the judgment of reversal, for the reason that the court erred in its general charge on the question of damages growing out of the issues made by the pleadings and the evidence.

The original petition in the case made a tort action. The amended petition, which the court permitted to be filed at the trial, and which was objected to, added matter sounding in contract. The defendant, plaintiff in error here, objected to the amendment, for the reason, as it claimed, that the amendment changed the cause of action from one in tort to one in contract.

The amended petition contains allegations *ex contractu* and *ex delicto*. The amended petition therefore did not change the cause of action, but added an allegation sounding in contract.

The General Code provides (Section 11306) that causes of action may be united in the same petition

when they include, first, the same transaction; and, second, transactions connected with the same subject of action. Therefore the amended petition was within the law of pleading authorized by the Code. *Sturges* v. *Burton,* 8 Ohio St., 215, 72 Am. Dec., 582.

The amended petition presents an action both *ex contractu* and *ex delicto.* The court, in its general charge, did not charge or explain to the jury that exemplary damages, growing out of malice, would not apply to damages resulting from a breach of contract. Punitive or exemplary damages are not recoverable in an action for breach of contract. *Ketcham* v. *Miller,* 104 Ohio St., 372, 136 N. E., 145.

Since the petition and the evidence present an issue of damages for breach of contract, as well as damages in tort, the court should have explained to the jury that, if they found that growing out of the transaction there was a breach of contract, no punitive damages could be awarded as to that phase of the case. Its failure to so charge was prejudicial error. The large verdict rendered in the case would indicate that the question of punitive damages entered largely into the case, and its prejudicial character is apparent.

The evidence of private dealings between Seal and Dater, and the feeling that existed between them, was only admissible under proper limitations, and not generally admissible.