## CORAL GABLES, INC. v SCHMIEDING

Ohio Appeals, 2nd Dist., Montgomery Co.

No. 1557. Decided May 29, 1940.

G. E. Miller, Dayton, for plaintiff-appellant.

F. W. Krehbiel, Dayton, for defendant-appellee.

## OPINION

By BARNES, J.

The above entitled cause is now being determined as an error proceeding by reason of plaintiff's appeal on questions of law from the judgment of the Court of Common Pleas of Montgomery County, Ohio.

The notice of appeal erroneously designates it as an appeal on questions of law and fact. Following the notice of appeal the requisite steps have been taken as to appeal on questions of law, and we will so consider it.

Plaintiff's action was predicated upon a promissory note, executed and delivered by the defendant on August 10, 1925, to Coral Gables Corporation, and allegedly endorsed in blank by the said corporation before due. It is disclosed from the evidence that the plaintiff, Coral Gables, Inc., is a separate and distinct entity from Coral Gables Corporation.

The petition further alleges that plaintiff is now the owner and holder of the note and for value. Copy of the note, with all endorsements, is attached to the petition as Exhibit A. The note on its face called

for $3206.25, payable in thirty-six consecutive monthly payments, the first thirty-five payments at $89.06 each and the last payment to be $89.15. The first payment was due September 8, 1925. The endorsements on the notes show a total payment on the principal of $1350.78, and interest in the sum of $270.00. The last payment was made on December 21, 1927. The petition was filed June 18, 1935.

Defendant's answer admitted the execution and delivery of the note to the Coral Gables Corporation, and the terms, conditions and payments as set out in the petition. All other allegations of the petition are denied.

As a first defense, the defendant avers that the note was given as consideration for the payment of the purchase price of certain described real estate located in Riviera Section, Dade County, Florida, subject to the conditions, limitations and restrictions as are more fully set out in a contract of sale of the same date.

The second paragraph of defendant's first defense of answer purports to set out fraud and deceit, as follows:

"Defendant further avers that said Coral Gables Corporation falsely and fraudulently, with intent to deceive said defendant, in order to induce him to purchase said lot as aforesaid, represented that there would be beautiful waterways, similar to the French Riviera, and those in Venice, to be built in said section; that there would be beautiful parks and playgrounds constructed along said section and that there would be many other improvements made, such as planting of beautiful groves and parkways and that only certain type houses would be built along these various sections, such as Dutch East Indian Pioneer Compound Type, Spanish Type and Neapolitan Baroque, and many other similar representations, too numerous to mention, which will be disclosed on the trial of this case, and all of which were false and untrue, which said company knew or should have known were untrue, and all made for the express purpose of deceiving said defendant and he relying upon the same, was deceived thereby and purchased said lot, which he otherwise would not have done, and gave the note which is being sued upon in plaintiff's petition for the same and upon said defendant learning the falsity of said representations, refused to make further payments upon the same."

Defendant's second defense, omitting certain formal averments reads as follows:

"and further says that the Coral Gables Corporation at the time of executing said contract to the defendant and receiving defendant's note therefor, applied to the Ohio Blue Sky Department of the State of Ohio, for permission to sell lots in the State of Ohio, but were refused after an investigation was made by said department, because of their misrepresentations made to said department and which defendant at the time was not aware of and that said Coral Gables Corporation had no authority in law to execute said contract with said defendant and receive his note therefor."

Defendant's third defense, omitting the formal averments, reads as follows:

"and further says that at the time of the execution of defendant's contract to said Coral Gables Corporation, said corporation was unable to give a good and suffi-

cient title to said lot which they sold to plaintiff, which they well knew at the time of entering into said agreement with defendant."

The answer also contains the following averment:

"Defendant further avers that said plaintiff herein took said note from said Coral Gables Corporation, after maturity and is therefore subject to all liabilities and equities that said defendant might have against said Coral Gables Corporation."

Then follows the prayer, asking that plaintiff's petition be dismissed and so forth.

Plaintiff's reply makes specific and general denials of the averments of the first defense, and denies generally the averments of the second and third defenses and all other averments in defendant's answer.

The case came on for trial before a jury, resulting in a verdict for the defendant.

Motion for new trial was duly filed, overruled and final judgment entered on December 10, 1938. Notice of appeal was filed within statutory time.

Appellant's assignments of error are set out under ten separately numbered specifications, and read as follows:

"FIRST: The Verdict of the Jury is against the weight of the evidence.

SECOND: The Verdict of the Jury is contrary to law.

THIRD: The Court erred in the admission of evidence over the objection and exception of Plaintiff-Appellant.

FOURTH: The Court erred in the exclusion of evidence over the objection and exception of Plaintiff-Appellant.

FIFTH: The Court erred in overruling Plaintiff-Appellant's motion for a directed verdict at the close of Defendant-Appellee's case.

SIXTH: The Court erred in overruling Plaintiff-Appellant's motion for a directed verdict at the close of all the evidence.

SEVENTH: The Court erred in his charge to the Jury.

EIGHTH: The Court erred in admitting in evidence Defendant-Appellee's Exhibit "1".

NINTH: The Court erred in admitting in evidence Defendant-Appellee's Exhibit "A".

TENTH: All other errors occurring at the trial of said case prejudicial to the rights of this Plaintiff-Appellant, by which this Plaintiff-Appellant was prevented from having a fair trial."

Counsel for plaintiff, in his brief, makes no attempt to present and discuss the claimed errors in the order set out in the assignment of errors. Many of the claimed errors may very appropriately be grouped, particularly 1, 2, 5 and 6. Consideration of these errors requires a very full and careful analysis of the transcript of the evidence, as contained in the bill of exceptions. This we have endeavored to do, although very difficult, in view of the very unsatisfactory manner in which the evidence was presented.

Defendant was very unfamiliar with any of the details surrounding the signing of the note and the land contract. In fact, he had no recollection of having signed the contract, but he admitted it was his signature thereto. He was very indefinite as to when and where the contract and note were signed. He had never been in Florida in his life and hence had no personal knowledge whatever as to the lot he contracted to purchase. He testifies that he made the deal on

the recommendation of his brother, and further that his brother showed him letters, telegrams and various advertising. He was also very indefinite as to the exact contents of the telegrams, letters and other advertising. When asked to state definitely what was said in these documents, he generally started off with he was given the impression, or he was given to understand, or other similar answers. When objections would be sustained to such answers and then direct questions would be asked as to certain representations, he would answer, yes. None of the telegrams, letters, advertising or other data upon which he said he relied in making the deal, were presented or identified by the defendant or any other witnesses. He stopped making further payments on the note on the advice of his brother because he understood that his signature had been fraudulently procured through misrepresentations. During the course of defendant's testimony he frequently injected the observation that representations were made that within a short period of time he would be able to sell the lot for much more than he contracted to pay. Taking his testimony as a whole, it would indicate that this element was probably the major incentive for his making the deal.

The brother referred to was Mr. H. J. Schmieding, of Dayton, Ohio. The brother was called as a witness for the defendant and testified at length. He personally knew the Merricks, George and Charles. Mr. George Merrick was the founder and president of the Coral Gables Corporation. The Riviera Section was acreage bought up by the corporation and platted with some 7500 lots, in the early part of 1925. It was a part of Coral Gables Municipality. Mr. H. J. Schmieding testified that on his trips to Florida, both before and after the deal, he visited the Merricks at their home, and was very well acquainted with the municipality of Coral Gables property. He never saw the lot contracted for by his brother, or the lots in the same vicinity contracted for by himself and another brother. He testifies that it was exclusively a platted acreage, with location only discernible through blue prints. There was much evidence that it was in the wild, abounding in palmettos, palm trees and other tropical vegetation. He testified in a rather vague and uncertain way that he represented Coral Gables Corporation in the sale of the lots to his brother. He presented no written evidence constituting him an agent. He finally stated that he thought the arrangement was made with Charles Merrick. No showing was made that Charles had any official connection with the corporation other than a salesman. He testified as to telegrams, letters, pamphlets and other advertising relative to the Riviera Section. None of these were produced. The explanation was that they were probably thrown away. He was permitted to testify as to their substance and stated that statements were made that canals would be constructed so as to provide a 40 mile water front, upon which gondolas would ply; that a very large sanitorium would be built; that roads, sidewalks and water mains were to be constructed and other improvements made, as set out in the petition. This witness also testified that when he made his trip in the fall of 1925, work in the way of development of this section had been started. Complaint is that it was never completed. The evidence is rather indefinite as to when and how it was to be done. They understood it was to be done within a short time, or within a reasonable time.

Another brother of the defendant was called as a witness, who gave testimony of the same import, although while in Florida recently he visited Coral Gables but not the lots purchased.

Mr. L. H. Coombes, of Florida, formerly connected with the Coral Gables Corporation, and now general manager of Coral Gables, Inc., was called and gave testimony. According to Mr. Coombes, all lots in the Riviera sub-division had been sold and all roads and sidewalks had been constructed, and water mains had been laid on all streets where any buildings were constructed; that canals had been built on which sail boats were to ply, but he knew nothing of any advertising relative to 40 miles of water front and does not think that this mileage has been constructed within Coral Gables and its subdivisions. In general, he says that everything that was agreed to be done has been done.

Mr. R. Bryan Cooper, of Dayton, Ohio, an attorney, formerly connected with the Blue Sky Department of Columbus, Ohio, was called as a witness by the defendant, and testified that he investigated the Riviera Section at the instance of Ohio authorities in connection with an application made by the Coral Gables Corporation for authority to sell lots in Ohio. In his judgment the proposition was purely speculative, and its location and topography did not present sustained value. He gave evidence of a very wild state. The application of the corporation was denied.

We are forced to the conclusion that defendant's testimony and his supporting evidence is so vague and uncertain on vital questions as compared with the testimony of Mr. Coombes, manager of the plaintiff company, that defendant has failed to establish by a preponderance of the evidence actionable fraud and deceit.

The elements essential to maintain an action for damages for deceit are very fully set out in **Vol. 19 O. Jur., page 335 § 24,** which we quote:

"First of all, there must be actual or implied representations or concealment of a matter of fact which relates to the present or past, and which is material to the transaction; secondly, the representation must be false; thirdly, the representation must be made with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred; fourthly, it must be made with the intent of misleading another into relying upon it; fifthly, this other person must have relied upon it with a right to so rely; and lastly, injury must have resulted as the consequence of such reliance. All of these ingredients must be found to exist, and the absence of any one of them is fatal to recovery. The grounds of the action of deceit are fraud and damage, and when both concur the action will lie. Moreover, both must concur to constitute actionable fraud."

While the present action is not strictly one for damages as such, yet the same principle applies.

The mere fact that some of the things which defendant avers were to be done by the corporation in the way of developing specifically have not been done, would not be a ground for rescission of the contract. (It would be necessary to show that there was no intention to perform at the time the representations were made). Of course, this might be shown by cir-

cumstances from which a warranted inference would arise. Another element to be segregated would be statements in the nature of puffing. Also opinions as to future values. Some of the evidence given on the question of future value, over objection of plaintiff, we think was error. This will be referred to later. We only mention this at this time for the purpose of presenting an understanding that in determining the weight of the evidence we limit ourselves to that evidence which was properly introduced.

It probably is a debatable question as to whether or not under all the evidence presented on the question of fraud and deceit, we might not determine as a matter of law that defendant has failed in his proof. We exercise our discretion and refrain from so holding for an additional reason that it seems to us that the defendant has failed to appreciate the essential elements constituting fraud and deceit, and for that reason, or some other, has failed to present evidence which may be of help.

Regardless of our conclusion on the issue raised of fraud and deceit in the first defense of the answer, it is essential that we go farther in determining whether or not the verdict and judgment may be sustained under the remaining defenses of the answer.

The second defense as construed by both counsel for the plaintiff and the defendant and the trial court, seeks to raise the issue that since the Coral Gables Corporation failed to qualify under the Blue Sky Department of Ohio, that a contract of sale entered into in Ohio for Florida lots would be void. Since apparently no question is raised on this principle of law, we refrain from making any observation thereon. Plaintiff contends, with much logic, that there is no evidence in the record whatever supporting the claim that a contract for the purchase and sale of the Florida lot was entered into in Ohio. Apparently counsel for defendant was laboring under the impression that when he presented evidence that his client signed the contract and note in ▇▇▇▇▇▇ ▇ Dayton, that it was not necessary to present evidence that the Coral Gables Corporation had signed the contract before forwarding to Dayton. In effect the trial court told the jury that the place of contract would be determined as the place where it was finally executed. Plaintiff introduced testimony that the blank contract when sent to Dayton was not signed by the Coral Gables Corporation, but was signed by it in duplicate after its return to Florida, duly signed by the defendant. It may be difficult to understand why the Coral Gables Corporation would send the papers to a Dayton financial institution with instructions to procure the signature of Mr. Schmieding to note and contract if the contract had not been duly executed by it. It was a rather peculiar technique, but the evidence stands uncontradicted. Regardless of this query, there is no evidence that the Coral Gables Corporation had signed the contract before mailing to Dayton and procuring the signature of Mr. Schmieding. We therefore hold that on this question there is a failure of proof.

The third defense of defendant's answer was withdrawn by the trial court on the ground that defendant had presented no supporting evidence.

We now go to the question of claimed error in the introduction and rejection of testimony.

The only question to which we direct attention is the testimony of defendant and his brother that rep-

resentations were made in substance that the property would rapidly enhance in value and within a very short period of time could be sold for a handsome profit.

This would be a mere matter of opinion and would not be the basis for actionable fraud. This evidence was objected to and over-ruled. We determine that this was prejudicial error.

Counsel for plaintiff makes the claim that none of the special defenses should avail for the reason that plaintiff was a holder in due course.

According to the testimony of Mr. Coombes, manager of the present plaintiff, and formerly connected with the Coral Gables Corporation, the note in question was sold in June, 1926, to R. K. LeBlond, of Cincinnati. The endorsement on the note is in blank and undated. The plaintiff, according to the testimony of this same witness, procured the note in April, 1929. Coral Gables, Inc., was not in existence until 1929. According to the testimony, it was organized for the purpose of acting as trustee in the collection of outstanding notes sold or hypothecated by Coral Gables Corporation. The plaintiff company also took title to all lots upon which there were outstanding obligations, as in the instant case. It at once appears that the note in question was past due before the plaintiff came into existence. Plaintiff claims that nevertheless it was a holder in due course under and by virtue of the provisions of §8163 GC which reads as follows:

"Sec. 8163. When subject to original defenses. In the hands of any holder other than a holder in due course, a negotiable instrument is subject to the same defenses as if it were non-negotiable. But a holder who derives his title through a holder in due course, and who is not himself a party to any fraud or illegality affecting the instrument, has all the rights of such former holder in respect of all parties prior to the latter."

Sec. 8164 GC should be read in connection with §8163 GC. The latter section reads as follows:

"Sec. 8164. Who deemed holder in due course. Every holder is deemed prima facie to be a holder in due course; but when it is shown that the title of any person who negotiated the instrument was defective, the burden is on the holder to prove that he or some person under whom he claims acquired the title as a holder in due course. The last rule does not apply in favor of a party who became bound on the instrument prior to the acquisition of such defective title."

It will be noted from the latter section that under certain conditions the burden is on the holder to prove that he or some person under whom he claims, acquired the title in due course. Mr. LeBlond, the claimed holder in due course, presented no evidence whatever, nor was any evidence given touching the question as to whether or not he was a holder in due course. This section has been construed by the Ohio courts:

Ragan v Sherman, 1 Oh Ap 273;
Bank v Clark, 12 Oh Ap 354;
Thompson v Bank, 13 C. C., N. S., affirmed without opinion 82 Oh St 446.

Complaint is also raised on the charge of the trial court to the jury. Other than those matters which necessarily follow from our determination of former questions, we

 

find no prejudicial error in the charge of the court.

The verdict of the jury and judgment of the trial court will be reversed, and the cause remanded for new trial.

Exceptions will be allowed.

HORNBECK, PJ. and GEIGER, J., concur.