**PUBLIC FINANCE CORP., Plaintiff, v. CALLOPY, Defendant.**

Ravenna Municipal Court.

No. 4981. Decided August 31, 1959.

Morris Mendelssohn, Youngstown, for plaintiff.
William J. Smith, Ravenna, for defendant.

## OPINION

By FRANCE, J.

This matter was tried to the Court August 21, 1959, no jury being demanded, on the petition, the amended answer and plaintiff's reply.

The petition recites the claim, now depressingly familiar to this court, that defendant obtained a loan; that as a condition of obtaining it he executed a financial statement purporting to list all his debts and liabilities; that several creditors were omitted from such list; that plaintiff relied on the statement and made the loan. By way of emphasis plaintiff concludes that defendant obtained "this said loan by making a materially false statement AND/OR false pretense." (Emphasis added.) It concludes that there is now due and owing $248.72.

The answer, stripped of many evidenciary statements, stricken on motion, recites:

1—a denial of intentional failure to list creditors

2—a denial of reliance by plaintiff on such statements as may have been unintentionally incorrect.

3—discharge in bankruptcy in a proceeding in which plaintiff's claim was listed.

Plaintiff's reply, going somewhat afield, alleges that "the judgment" (?) "taken by plaintiff against the defendant was in the form of a cognovit promissory note with warrant of attorney thereto attached, duly executed by this defendant; that by virtue of the note the plaintiff is authorized to take judgment against him and others on the said note." It further recites that defendant failed properly to list the claim in question by listing the creditor as "Public Finance Corp." when it should have been listed as "Public Finance Corporation of Warren No. 5" in the bankruptcy proceedings.

To say the least, the state of the pleadings leaves something to be desired. Plaintiff has first embarked on a course of claiming that defendant obtained money by false pretenses, complete with the ear grating "and/or" allegation in no less than five places in his petition; in his reply he shifts ground to allege some sort of pre-existing judgment, source unknown.

Such confused pleading illustrates the almost pathological desire of small loan company counsel to anticipate and avoid an expected bankruptcy defense. Such is not the office of a petition! Defenses which are affirmative must be set up in answer and if set up, **then and only then** should be met by proper averments in the reply, as in the instant case by the recital of facts bringing the debt within section 17 (c) of the Bankruptcy Act (11 U. S. C. Sec. 35 [c]):

"A discharge in bankruptcy shall release a bankrupt from all his provable debts whether allowable in full or in part except such as . . . are liabilities for obtaining money or property by false pretenses or false representations."

See **Ohio Finance Co. v. Greathouse, 64 Abs 1, 3** (7th District Court of Appeals). This is not a question of plaintiff's shifting its claim from contract to tort or tort to contract, but of avoiding an affirmative defense correctly set up. While fact pleading is the rule in Ohio, counsel should not lose sight of the fact that pleadings, properly drawn, frame

issues which are progressively narrowed as they develop, and as an end result a limited number of contraverted issues of fact are presented to the trier of the facts for decision. The series of maundering claims presented by the pleadings in this case measurably increased the length of the proceeding and at times left counsel in some confusion as to the real point at issue.

The one issue clearly and properly raised by plaintiff's reply was that the claim was not discharged by bankruptcy because it was identified as "Public Finance Corp.," instead of "Public Finance Corporation of Warren No. 5." In the face of all the exhibits it is clear that the correct address was given for the creditor in the bankruptcy schedules, that notice of the proceeding would logically come to plaintiff at the address listed and the receipt of such notices was not denied. If the crossing of a "T," the dotting of an "I," or the abbreviating of the word corporation to corp., are to be allowed by state courts to upset the liberal provisions made by federal statute for discharges in bankruptcy, then there is no point to honest debtors seeking the relief of bankruptcy, for minor scrivener's errors will be present in any type of judicial proceeding. In this respect, the court does not believe that the facts at bar bring the case within the rule laid down by the Seventh District Court of Appeals in Public Finance Corporation No. 1 v. Menelle, an unpublished, per curiam, opinion relied upon by plaintiff. Plaintiff's claim on this point is rejected.

The principal issue of the case, however, was whether a financial statement made by the defendant, in which five debts existing at the time were omitted, was relied upon by plaintiff in making its loan. It is clear that failure to list standing alone, unless relied upon by the creditor, is insufficient to upset the bankruptcy discharge. Syllabus 1, Ohio Finance Co. v. Greathouse, supra; In re Hose, 80 Abs 236 (Referee— Northern Dist., Ohio); In re Holbrook, 80 Abs 186 (Northern Dist. Ohio) and numerous cases therein cited.

The undisputed facts in this regard are:

1—That the loan in question was a renewal of an existing loan then past due.

2—That the net proceeds of the loan in cash to defendant were approximately $12.00, the balance of the loan of $251.00 being used to retire the pre-existing loan of plaintiff.

3—That defendant did not expect to receive any cash at all at the time of the loan.

4—That the note in question was drawn before defendant arrived, after being summoned by plaintiff to plaintiff's loan office.

5—That chattel mortgage security, the same as for the pre-existing note, was taken for the note in question.

6—That the note was unpaid—(But the note has stamped on its reverse side the legend "Reduced to judgment 9-22-58 Municipal Court of Youngstown, Ohio, Case No. 37364 Frank R. Franko, Judge").

7—That defendant's schedules in bankruptcy listed at least five creditors not listed in his financial statement given to plaintiff.

Only two essential facts (which are really the same fact differently stated) are in dispute:

Did plaintiff's agent actually tell defendant at the time of making the written statement "Just list three creditors; that's all that's necessary"?

Did plaintiff actually rely on the statement as given in making the loan?

On the first point the logic of time, circumstance and the nature of plaintiff's own printed form supports defendant's version. The loan was hurriedly consummated at plaintiff's—not defendant's—instance; it was a renewal; and there were only six (6) spaces provided for the listing of all possible creditors of a prospective borrower. As this court observed in Sun Finance and Loan Co. v. Cononico, No. 5146, given the large number of creditors enjoyed (?) by the average small loan customer, the printing of forms which leave space for only five or six of them is a highly suspicious circumstance. No person who has watched and listened to the hundreds of television ads placed by small loan companies could doubt that their appeal is made to those with countless numbers of pressing small claims. Judges, especially municipal judges whose pay scale could well make them small loan customers, are not so wrapped in a protective shield of cotton wool as to remain ignorant of such advertising appeal and may therefore take judicial notice of it. Until the small loan companies make their financial statement forms consistent with their advertising, courts can scarcely be blamed for viewing with the suspicion the claim that postage stamp size space on a form is expected to produce an exhaustive list of creditors.

Against all these facts is posed the single answer of plaintiff's manager to a very leading question:

"If you had known about these other bills (of defendant) would you have made the loan?" "No." Such an answer, in the opinion of the court, is preposterous, and one which reflects seriously on the intellectual integrity of the witness, to say nothing of the dead-pan forensics of counsel. Under the circumstances, there was no credible evidence of reliance on the financial statement.

Defendant, having proved his bankruptcy discharge against plaintiff's claim, and there being no credible evidence that plaintiff relied on any false financial statement, plaintiff's claim fails.

Journal entry entering finding and judgment in favor of defendant shall be submitted by counsel, and if not so submitted by September 10, 1959, will be filed by the Court.

### PUBLIC FINANCE CORP., Plaintiff, v. CALLOPY, Defendant.

### No. 4740.

**Attachment [Abs & O. Jur.] §414**

1. A discharge in bankruptcy antedating the rendition of a judgment valid on its face may be shown as a defense to a proceeding in aid of execution on that judgment in a court other than the one in which the judgment was rendered. (Sec. 2329.02 R. C.)

### HEADNOTE BY EDITORIAL STAFF

HISTORY:—Motion to discharge attachment. Motion granted. For further history see **Omnibus Index** in bound volume.

## OPINION

By FRANCE, J.

It appears from the evidence herein that defendant executed cognovit note in favor of plaintiff sometime prior to May 1958, on which there was a balance due on May 19, 1958, the sum of $230.00. On that date defendant filed voluntary petition in bankruptcy correctly listing plaintiff's (judgment creditor's) name, address and amount due in his schedules. The record is silent as to whether plaintiff participated in the bankruptcy proceeding, which terminated in defendant's discharge on September 9, 1958.

Almost immediately after the granting of the discharge, on September 27, 1958, plaintiff took judgment in Youngstown Municipal Court and immediately forwarded certificate of such judgment for the purpose of instituting proceedings in aid of execution thereon.

The record forwarded by the Youngstown Municipal Court is exceedingly meagre and does not show on its face that the judgment there taken was by confession under warrant of attorney. But from a study of the sequence of dates involved, and proof that the defendant has been for some years a resident of Portage County, and at no time since May 1958, was he in Youngstown or even in Mahoning County to receive service of process, it is apparent that the judgment could rest on no other basis than confession, and that a cognovvit judgment was involved. Nor does the record indicate that execution was ever issued and returned prior to the isuing of the process in aid of execution.

Upon issuance by this court of notice to Hiram College, the claimed judgment debtor's debtor, the defendant filed motion to stay proceedings for the purpose of filing motion to vacate the judgment of Youngstown Municipal Court. Such motion to vacate was then filed, but subsequently withdrawn, apparently in reliance on **Friedman Finance Co. v. Shirley, 168 Oh St 273,** and motion to discharge the attachment was filed herein. The matter came on for hearing on the latter motion. Evidence, including the schedules and discharge in bankruptcy, testimony on the identity of the debt and the nature of the Youngstown judgment was offered.

Decision is complicated both by the vagueness of the 1957 amendments to §2329.02 R. C., and the sweeping nature of the decision of the Supreme Court in Friedman Finance Co. v. Shirley, supra. The amendment merely states:

"Notwithstanding any other provision of the Revised Code, any judgment issued in a court of record may be transferred to any other court of record. Any proceedings for collection may be had on such judgment the same as if it had been issued by the transferee court."

Without indicating the nature of the documents or proceedings required to effectuate the transfer. See Zimmerman, Municipal Court Practice, 1958 Supp., 156-7. As a result many municipal courts, following the line of least resistance, or of greatest ease, have resorted

merely to forwarding the old form of certificate of judgment for lien (§2339.04 R. C.), a procedure disapproved by Paulino, J., in **Ohio Loan and Discount Co. v. Brown et al, 79 Abs 280.**

Even assuming, however, that the judgment was in this case correctly transferred (—and defendant does not challenge the effectiveness of the transfer—) the Shirley case imposes a great strain on pre-existing notions of the bench and bar concerning collateral attack as reaching the merits of a decision of a court of record which unquestionably had jurisdiction of subject matter and person. Under the Shirley rule a discharge in bankruptcy **antedating the rendition of a judgment valid on its face** may be shown as a defense to a proceeding in aid of execution on that judgment.

The Shirley case involved aid of execution in the same court which rendered the judgment, in which case the entire file of the case is before the court in the proceedings in aid of execution. Correlatively the final decision refusing aid of execution goes into the file of the original judgment and this, backhandedly, becomes a final order restraining further proceedings on its collection.

Where, however, a transfer of judgment under statute is involved (a possibility apparently not considered by the Supreme Court) confusion is endless and at least two equally vicious types of collateral attack are permitted. First, a valid discharge in bankruptcy is permitted to be set at naught in a later proceeding in a state court without even a suggestion of requiring the pleadings to set up fraudulent or criminal incurrance of the discharged obligation as required by Sec. 17(c) Bankruptcy Act.

Second, the resulting judgment in one state court is permitted to be attacked in turn by way of defense in a proceeding ancillary and supplemental to it and, as in the instant case, in a court removed in space and time from the granting court.

The fact that the two permitted attacks are, in this case, mutually compensating and self correcting gives the rule no particular virtue. It would require no vivid imagination to conceive, in such situation, a retransfer of the underlying judgment back to the issuing court, and proceedings in aid instituted either there or in another to which the judgment would be again transferred, permitting a seemingly endless series of adjudications of the same question in many different courts. The end result is not likely to be very impressive so far as public confidence in the court system is concerned.

This court is constrained to follow the very explicit ruling of the Supreme Court in the Shirley case, which leaves no opportunity for an exception based on change of identity of the court which passes on proceedings in aid of execution. It does so reluctantly and in the hope that the high court will reconsider the basis of the Shirley decision and place it squarely on approval of Dye v. Bertram, 5 O. D. Rep. 508, which holds that discharge in bankruptcy terminates the power to confess judgment contained in any instrument of indebtedness before the bankruptcy court at time of discharge. Such a holding would give some finality to discharges in bankruptcy and prevent litigants from endlessly re-litigating the same question in a series of courts.

Journal entry discharging the attachment and ordering release of attached funds to the defendant, at costs of plaintiff judgment creditor, with proper exceptions to judgment creditor, will be entered.