**SCHUSTER ELECTRIC CO v**

**HAMILTON COUNTY STORES, INC**

Ohio Appeals, 1st Dist, Hamilton Co

No 5577. Decided March 20, 1939

LeBlond, Morrissey, Terry & Gilday, Cincinnati; for appellee.

Donald E. Calhoun, Cincinnati, and Cedric Vogel, Cincinnati, for appellant.

## OPINION

By HAMILTON, PJ.

This case is before this court on an appeal on questions of law from a judgment of the court of common pleas, affirming the judgment of the Municipal Court of Cincinnati in favor of the Schuster Electric Company, plaintiff, appellee here.

The plaintiff, Schuster Electric Company, in its amended bill of particulars, filed in the Municipal Court of Cincinnati, claimed the right to recover from the defendant, Hamilton County Stores, Inc., on two causes of action.

The Municipal Court dismissed the plaintiff's second cause of action at the trial, but permitted the case to go to the jury on the first cause of action, resulting in a verdict at the hands of the jury for the full amount claimed.

Motion for a new trial was overruled and judgment was rendered on the verdict. On appeal, the court of common pleas affirmed that judgment.

It appears from the record that the claim of the plaintiff grows out of its dealings with the Doerfler Electric Company, owned and operated by one Carl Doerfler, in Cincinnati, Ohio. The parties dealt in radios and other household equipment. The Schuster Electric Company had been doing business with Doerfler Electric Company, and had a running account with it, upon which it delivered its merchandise on 30-60-120 days credit. The last article delivered by Schuster Electric Company to the Doerfler Electric Company was on September 28th, 1937. On September 30th, 1937, the defendant, Hamilton County Stores, Inc., entered into negotiations with the Doerfler Electric Company to purchase its business including its stocks of merchandise, a part of which had been sold to Doerfler Electric Company by plaintiff, Schuster Electric Company. These negotiations resulted in a contract for the sale of its business by the Doerfler Electric Company to Hamilton County Stores, Inc. This was on the 4th day of October, 1937. The Hamilton County Stores, Inc., went into tentative possession of the Doerfler Electric Company's business and store, and thereupon began an examination of its business condition.

Under this contract of purchase and sale, the contract provided:

"* * * and in further consideration of the mutual promises and agreements set forth herein, it is hereby agreed that party of the first part does hereby sell, assign, transfer and set over unto party of the second part, as of this day, the above business including all assets which he may now own. in connection therewith, including the stock of merchandise, accounts receivable, written contracts, promissory notes, chattel mortgages, together with the security covered by the same, ledgers, books and accounts and bank accounts, and all assets whatsoever of the said business, and party of the second part, agrees to assume and pay all the obligations of the above business as of this date, as shown by the books of the said party of the first part, including all accounts payable, all contingent liability on commercial paper that have been discounted and all other liabilities arising out of said business, as shown by the books thereof. The said party of the first part does hereby warrant that his books correctly and truly show and disclose all indebtedness of the said Company," etc.

Following the execution of this contract, on the 7th day of October, 1938, an agent of the plaintiff called on the Manager of Hamilton County Stores, Inc., Mr. Meinberg, and testified:

"I told Mr. Meinberg I understood he had purchased, the Hamilton County Stores had purchased, the Doerfler Electric Company, and he said 'Yes, we took it over'. He said 'Your bill will be paid' and he said 'If you will bring me the duplicate invoices, bring me your invoices in duplicate to the Hamilton County Stores, Inc., I will see that the bill is paid.' I told Mr Meinberg that there were several radios he had in the store that we were badly in need of and I would like to take this particular radio back. He said there was no use in doing that; we would only have to ship them back up here again, they bought the business."

After examining the business, the de-fendant company discovered that the business was insolvent, plus a debt of approximately $5,000 owed The Peoples Liberty Bank as a direct liability, and a sum of approximately $40,000 as a contingent liability, that were not on the books of the Doerfler Electric Company, none of which had been disclosd by Doerfler in the sale.

Immediately upon this discovery, Hamilton County Stores, Inc., rescinded the contract for misrepresentation and breach of warranty in the contract, and so notified Doerfler by letter.

On the 17th of October, Doerfler, after receiving the letter, abandoned the business and left the state. Four days later, The Liberty Bank & Trust Company filed suit in the court of common pleas of Hamilton County against Carl Doerfler, doing business as Doerfler Electric Company, seeking a money judgment, attachment, and the appointment of a receiver. Following that, the business and property was taken over by the receiver.

The right to rescind and the recission was never questioned by any proceeding.

Under the amended bill of particulars the complaint was in effect that the promise of Meinberg to pay its claim and its refraining from taking steps to prosecute its claim, relying on the promise of Meinberg, constituted a fraud upon it, entitled it to recover against Hamilton County Stores, Inc., as said representations were made by its manager, Meinberg.

Defendant contends that Meinberg was without power to bind the Company.

We are not impressed with this claim. Meinberg was the manager of Hamilton County Stores, Inc., and he was the person who conducted the negotiations for purchase and sale, and had full charge of the business, and had full charge of the transaction with Doerfler. From the extent of his powers, we are inclined to the view that he could bind the Company under a promise if the company could be bound under the

circumstances.

This brings us to the point of the effect of any such promise, and particularly the promise by Meinberg, as quoted above.

To constitute fraud, based upon false statements, the false representations must be as to material matters of the present or past, and cannot be based on representations concerning future purpose or expectation. No fraudulent intent is shown in the record. Meinberg represented that the bill would be paid by his company, stating that the agent should bring in the invoices, etc., and this was purely as to a future intention. The representation was nothing more than his suggestion that they would carry out the terms of their agreement, which at that moment they fully intended to do, provided they found the business as represented. If it be claimed that Meinberg's statement, that the bill would be paid, was based upon a good consideration that the defendant would not sue, then the question of fraud is eliminated, if there was any evidence to that effect. There is nothing in the record to show any promise on the part of Schuster Electric Company not to sue. All of the evidence is to the effect that there was simply a discussion as to the status of the Schuster account and the promise of Meinberg that he would carry out the terms of the contract as it stood at that time, and no such promise is involved.

The contract under which Meinberg made the promise was rescinded. Having been rescinded, the contract was ineffective ab initio, and no rights could be predicated on that contract as such.

This consideration would dispose of the case, but there is the further question in the case, that the court should not have submitted the case to the jury, since there is no evidence of damages recoverable at law. This is on the ground that any damage proven under these allegations would be merely speculative, since the Schuster Electric Company had no lien on any of the property, and only had a claim as a general creditor.

What provable damage could plaintiff prove arising under the claim of false representation? This sale was a Bulk Sales law transaction. If the contract had been valid and the requirements of the Bulk Sales Law not having been complied with, as indicated, plaintiff could have gone into court and had a trustee appointed and taken the steps which the law provides to protect its claim. Had Meinberg made no promise to the effect that he would carry out the contract to pay the bill, the plaintiff could have brought suit against Doerfler Electric Company, which would in all probability have resulted in a receivership, and it would have been placed in the position it now is, as a general creditor, to receive any dividends arising from the receivership. It lost no lien. No attachment was defeated, if it had sought one. It did not lose possession of any property, since it did not have possession. It lost no claim or interest on the account. The most that could be said was, that had it not relied on Meinberg's promise to pay the bill, that it could have proceeded by way of attachment or suit and levy to collect its claim.

The plaintiff company was not bound to rely on Meinberg's promise. It could have taken any steps under the law to collect its claim, which it saw fit. On the whole, it does not appear that the tort, if any, of the defendant caused any damage to the plaintiff Company. See: Adler v Fenton, 65 U. S. 407; Bradley v Fuller, 118 Mass. 238; Evans v Burson, 147 Pac. 461; Adler v Fenton, 24 Howard 407; and 12 R. C. L. 240.

Our conclusion is, that by reason of an entire failure of proof of actionable fraud or misrepresentation, and the claim thereunder for damages being too remote, contingent, and speculative to permit a judgment, the judgment of the court of common pleas, affirming

the judgment of the Municipal Court of Cincinnati will be reversed, and judgment will be rendered nere in favor of the appellant.

MATTHEWS & ROSS, JJ, concur.