OPINION
{¶ 1} Appellants, CR, Inc., CR Process, Inc. (collectively "CR"), Ronald Murphy ("Murphy"), and Chris Murphy (sometimes referred to collectively as "appellants"), filed this appeal seeking reversal of a judgment by the Franklin County Court of Common Pleas granting summary judgment in favor of appellees, Liberty Mutual Fire Insurance Company ("Liberty Mutual"), Liberty Mutual Insurance Group, and Rex Ballinger *Page 2 
("Ballinger") (collectively "appellees"). For the reasons that follow, we affirm in part and reverse in part.
 {¶ 2} Viewed in a light most favorable to appellants as the non-moving parties, the facts for purposes of summary judgment are as follows: For a number of years prior to this case, appellants had a business relationship with appellees whereby they purchased insurance policies issued by Liberty Mutual through Ballinger, a Liberty Mutual agent working out of the Liberty Mutual offices as part of the Liberty Mutual Insurance Group. The policies appellants purchased included commercial automobile insurance that provided underinsured motorist ("UIM") coverage with limits of $1,000,000. The policies were renewed as of September 1 every year.
 {¶ 3} In August 2001, Ballinger contacted appellants through employee Donna Hughes ("Hughes"), who was the person responsible for maintaining insurance for the company, regarding the upcoming September 1 renewal. Ballinger told Hughes Liberty Mutual would no longer be offering commercial automobile coverage in Ohio due to concerns about certain Ohio Supreme Court decisions that created uncertainty in the market for UIM coverage. See, e.g., Scott-Pontzer v. Liberty Mut. Fire Ins.Co. (1999), 85 Ohio St.3d 660, 710 N.E.2d 1116.
 {¶ 4} Ballinger was able to arrange for the purchase of commercial automobile insurance coverage through Helmsman Insurance Agency ("Helmsman"), a broker owned by Liberty Mutual for the purpose of helping Liberty Mutual customers obtain insurance products not offered by Liberty Mutual. The policy was issued by Acuity Insurance Company, and included UIM coverage with limits of $1,000,000. *Page 3 
 {¶ 5} In her affidavit attached to appellants' memorandum contra, Hughes stated that during the winter of 2002, Ballinger informed Hughes that Liberty Mutual was once again in the business of writing commercial automobile policies in Ohio. In June 2002, Helmsman sent Hughes a letter regarding renewal of the Acuity policy for the year beginning September 1, 2002, asking whether CR would be submitting a renewal application. That letter included information regarding the terms of coverage for the previous year, although it contains no specific reference to UIM coverage. Because they had experienced problems with the Acuity policy, Hughes directed Ballinger to prepare a quote for commercial automobile coverage from Liberty Mutual, and to inform Helmsman that CR would not be submitting a renewal application for the Acuity policy. Hughes stated that she assumed the quote from Liberty Mutual would include UIM coverage limits of $1,000,000.
 {¶ 6} In August 2002, Ballinger brought the packet with the proposals for all of CR's insurance coverage to Hughes. The proposal for commercial automobile coverage included UIM limits of $100,000 rather than $1,000,000. Hughes stated that when asked about the lower UIM coverage limits, Ballinger stated that Liberty Mutual would sell policies with UIM limits no greater than $100,000, that no insurance carriers in Ohio were selling policies with limits greater than $100,000, and that he would contact CR if Liberty Mutual began selling policies with higher UIM limits in the future.
 {¶ 7} Appellants elected to obtain their automobile insurance from Liberty Mutual notwithstanding the lower UIM coverage limits, and renewed the policy with the lower UIM limits for the year beginning September 1, 2003. In her affidavit, Hughes stated that *Page 4 
Ballinger told her at the time of the 2003 renewal that nothing regarding coverage had changed during the previous year.
 {¶ 8} The parties stipulated that, if CR had renewed the Acuity policy, that policy would have included UIM coverage limits of $1,000,000. The evidence also shows that Liberty Mutual did sell policies with UIM coverage limits of $1,000,000 to some of its customers during the years 2002 and 2003.
 {¶ 9} In November 2003, appellant Ron Murphy was seriously injured in an automobile accident as the result of another driver's negligence. The value of his subsequent personal injury claim exceeded $1,000,000, and the driver who was at fault in the accident had liability coverage with limits of $100,000. Because the liability coverage limits matched the UIM coverage limits under appellants' policy, Murphy was denied recovery under the UIM provisions of the policy.
 {¶ 10} Appellants filed suit, alleging that if they had been informed that UIM coverage limits of $1,000,000 were available, they would have obtained coverage in that amount, which would then have been available as recovery for Murphy's injuries. Thus, appellants claimed they had been damaged in the amount of $900,000, the difference between the UIM coverage they had and that which they would have obtained. Appellants' complaint specifically enumerated four causes of action: (1) failure to procure insurance, (2) negligence, (3) breach of fiduciary duty, and (4) violation of the obligation of good faith.
 {¶ 11} After conducting discovery, appellees filed a motion for summary judgment. The trial court granted the motion, and appellants filed this appeal, alleging as the sole assignment of error: *Page 5 
 The trial court erred in its decision of July 17, 2007 and judgment entry of August 6, 2007 in which it sustained Defendants' Motion for Summary Judgment and dismissed all of Plaintiffs' claims against the Defendants, Liberty Mutual Fire Insurance Company, Liberty Insurance Group, and Rex J. Ballinger.
 {¶ 12} We review the trial court's grant of summary judgment de novo.Coventry Twp. v. Ecker (1995), 101 Ohio App.3d 38, 654 N.E.2d 1327. Summary judgment is proper only when the party moving for summary judgment demonstrates: (1) no genuine issue of material fact exists, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds could come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, when the evidence is construed in a light most favorable to the nonmoving party. Civ.R. 56(C); State ex rel. Grady v. State Emp.Relations Bd. (1997), 78 Ohio St.3d 181, 183, 677 N.E.2d 343.
 {¶ 13} Initially, we note that there is some disagreement between the parties regarding the causes of action appellants have asserted. Although the complaint specifically listed causes of action for failure to procure insurance, negligence, breach of fiduciary duty, and violation of the obligation of good faith, in their memorandum contra below, appellants identified the causes of action they were asserting as breach of contract, negligent misrepresentation, and fraud. Appellants argued that these three causes of action were identified by both parties as the claims at issue in the case in a joint pre-trial statement filed with the court.
 {¶ 14} Civ.R. 15(A) provides for amendment of a complaint after the time for a responsive pleading has passed only with leave of court or written consent of the *Page 6 
opposing party. Appellants did not seek leave of court to file an amended complaint to assert the claims identified by appellants in their memorandum contra and, while the participation of appellees' counsel in preparation of a joint pre-trial statement identifying those as the claims at issue may have constituted consent to amend the complaint, it is undisputed that no amended complaint setting forth those causes of action was ever filed. With respect to the fraud claim, Civ.R. 9(B) requires that the circumstances supporting a claim of fraud be pled with particularity, and the absence of an amended complaint complying with Civ.R. 9 is fatal to any fraud claim that may have been asserted by way of the pre-trial statement.
 {¶ 15} Regarding the breach of contract claim, appellants argue that the complaint, while not enumerating breach of contract as one of the causes of action, did adequately set forth a claim for breach of contract. In considering whether a claim has been pled with sufficient particularity, the question is whether the elements of the claim have been stated with sufficient particularity such that the opposing party is placed on reasonable notice of the claim. See In re Election Contestof Democratic Primary Held May 4, 1999 for Clerk, Youngstown Mun.Court, 87 Ohio St.3d 118, 1999-Ohio-302, 717 N.E.2d 701.
 {¶ 16} In their complaint, appellants asserted that:
 Liberty told Plaintiffs that UIM insurance in excess of [$100,000] was simply not available in Ohio because of some Ohio Supreme Court opinions. Plaintiffs were concerned with this low amount, but Liberty assured them that this was merely a "temporary fix," and that Liberty anticipated that $1,000,000 UIM coverage would soon be available again in Ohio, given the passage of S.B. 97 in October of 2001. When that happened, Liberty promised to advise Plaintiffs of this fact and to take the necessary measures to increase CR's UIM limits back to $1,000,000. Relying upon this, Plaintiffs accepted Liberty's recommendation and accordingly reduced *Page 7 
their Ohio commercial automobile UIM coverage from $1,000,000 to $100,000.
Complaint, at ¶ 5.
 {¶ 17} Generally, the elements of a claim for breach of contract are: (1) the existence of a contract, (2) performance by the plaintiff, (3) breach by the defendant, and (4) damage or loss to the plaintiff.Krukrubo v. Fifth Third Bank, Franklin App. No. 07AP-270,2007-Ohio-7007. Although couched in terms of a promise made by Liberty (through its agent Ballinger), the language of the complaint does not assert the existence of a contract. Rather, the complaint alleges, at most, an intention to enter into discussions regarding modification of the existing contract of insurance, or entrance into a new contract of insurance, at some point in the future. It is entirely speculative whether these discussions would have actually resulted in modification of the existing contract or creation of a new contract. As such, even under liberal notice pleading, we find appellants' complaint did not set forth a claim for breach of contract.
 {¶ 18} In their memorandum contra and on appeal, appellants argue that appellees may be held liable in this case under two distinct theories of negligence-negligent misrepresentation for Ballinger's assertions that UIM coverage with limits of $1,000,000 was not available from Liberty Mutual or from any other insurance company in Ohio, and negligence in failing to follow up on appellants' request that they be informed when UIM coverage with limits of $1,000,000 became available.[1] As with the breach of contract claim, the specific claim of negligent misrepresentation was not one of the *Page 8 
causes of action specifically enumerated in the complaint, but instead was identified through appellees' memorandum contra as a claim identified in the joint pre-trial statement. Under the cause of action labeled as negligence, the complaint states "Liberty negligently represented to Plaintiffs that Plaintiffs would not be able to obtain Ohio UIM automobile coverage in the amount of $1,000,000 prior to the date of the accident." Complaint, at ¶ 18. Although designated as a claim for negligence, the claim appears to actually be for negligent misrepresentation.
 {¶ 19} A claim for negligent misrepresentation can be established as follows: "One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information." (Emphasis omitted.) Delman v. Cleveland Hts. (1989),41 Ohio St.3d 1, 4, 534 N.E.2d 835.
 {¶ 20} Liability for negligent misrepresentation may be based on an actor's negligent failure to exercise reasonable care or competence in supplying correct information. Marasco v. Hopewell, Franklin App. No. 03AP-1081, 2004-Ohio-6715, citing 4 Restatement of the Law 2d, Torts (1977), Section 552, Comment a. "`A representation made with an honest belief in its truth may still be negligent, because of lack of reasonable care in ascertaining the facts, or in the manner of expression, or absence of the skill and competence required by a particular business or profession.'" Martin v. Ohio State Univ.Found. (2000), 139 Ohio App.3d 89, 104, 742 N.E.2d 1198, citingMerrill v. William E. Ward Ins. (1993), 87 Ohio App.3d 583, 590,622 N.E.2d 743, quoting Prosser *Page 9 Keeton, Law of Torts (5th Ed.1984) 745, Section 107. Whether or not the actor used reasonable care in obtaining or communicating information is a question for the jury, unless the facts are so clear as to permit only one conclusion. Marasco, supra, citing 4 Restatement of the Law 2d, Torts (1977), Section 552, Comment e.
 {¶ 21} In granting appellees' motion for summary judgment, the trial court focused on the stipulation entered into by the parties in which the parties agreed that, had appellants elected to renew their policy with Acuity in September 2002, that policy would have included UIM coverage with limits of $1,000,000. The court concluded that since $1,000,000 UIM coverage was available to them through Acuity, the precise statements that were made were irrelevant, because appellants chose to reject the Acuity policy that would have contained the insurance coverage they wanted.
 {¶ 22} However, the stipulation regarding the coverage available from Acuity is not dispositive of this case, because the issue is not whether the coverage was available, but whether appellants were unaware of its availability due to their reliance on statements made by Ballinger. The evidence showed that the communication from Helmsman regarding renewal of the Acuity policy involved whether appellants intended to submit an application to renew the policy, but did not include information regarding the terms of the policy. Before any discussion regarding the terms of the policy occurred, appellants elected to obtain their commercial automobile insurance from Liberty Mutual. During the process of switching the commercial automobile coverage back to Liberty Mutual, Ballinger purportedly told appellants that they could not obtain commercial automobile coverage with UIM limits of $1,000,000 from Liberty Mutual or from any other insurance company in Ohio. *Page 10 
 {¶ 23} The claim for negligent misrepresentation is based on two distinct statements appellants attribute to Ballinger: (1) $1,000,000 UIM coverage was not available from Liberty Mutual, and (2) $1,000,000 UIM coverage was not available from any other insurance company in Ohio. Regarding Ballinger's statement that appellants could not obtain commercial automobile coverage with UIM limits of $1,000,000 from Liberty Mutual, the evidence, viewed in a light most favorable to appellants as the non-moving party, showed that Liberty Mutual did, in fact, write policies with UIM limits of $1,000,000 during the relevant time period. However, these higher coverage limits were available only to some customers who wanted to obtain them, and Liberty Mutual made the decision whether to provide the higher limits only when asked and on a case-by-case basis. None of the Liberty Mutual employees who provided evidence could state with certainty whether or not Liberty Mutual would have underwritten a policy with UIM limits of $1,000,000 for appellants.
 {¶ 24} Given this evidence, genuine issues of material fact exist on the question of whether Ballinger's assertion that Liberty Mutual would not provide $1,000,000 UIM coverage to CR was a misrepresentation. Moreover, even assuming that the circumstances applicable to CR could have resulted in Liberty Mutual issuing a policy with the requested $1,000,000 UIM limits, whether Ballinger's assertion that the coverage was not available was the result of his negligent failure to obtain correct information, and whether appellants reasonably relied on the assertion, are genuine issues of material fact that precluded summary judgment.
 {¶ 25} As for Ballinger's assertion that commercial automobile coverage with UIM limits of $1,000,000 was not available from any other insurance company in Ohio, the *Page 11 
parties stipulated to the fact that the requested coverage was available from Acuity. However, appellants argue that they were not aware that the Acuity policy they could have obtained in 2002 contained UIM coverage limits of $1,000,000 because the renewal information they received did not contain information about the policy limits available for that year, and the statement allegedly made by Ballinger caused them to believe a policy from Acuity would not have contained the higher limits. Viewing the evidence in a light most favorable to appellants as the non-moving party, whether Ballinger was negligent in obtaining or communicating the information regarding the availability of higher UIM coverage from other insurance companies, and whether appellants reasonably relied on the assertion in light of their receipt of the renewal information on the Acuity policy, are genuine issues of material fact. Consequently, the trial court erred in granting summary judgment on appellants' claim for negligent misrepresentation.
 {¶ 26} The second theory of negligence argued by appellants asserts that Ballinger was negligent when he told Hughes that he would inform CR when Liberty Mutual offered UIM coverage of $1,000,000, and then failed to do so. This claim for negligence appears to be a claim for negligent failure to procure insurance, which appellants labeled the first cause of action in the complaint. Ohio courts have recognized that a claim of negligence can be established by an insurance agent's negligent failure to procure adequate insurance. Minor v. Allstate Ins.Co. (1996), 111 Ohio App.3d 16, 675 N.E.2d 550; Horak v. Nationwide Ins.Co., Summit App. No. CA 23327, 2007-Ohio-3744. An insurance agent may be liable if, as the result of a negligent failure to procure insurance, the other party to an insurance contract suffers a loss as the result of a want of *Page 12 
insurance coverage contemplated by the agent's undertaking. Ruggiero v.Nationwide Ins. Co., Cuyahoga App. No. 86431, 2006-Ohio-808.
 {¶ 27} The scope of Ballinger's undertaking was not the actual procurement of an insurance policy with UIM limits of $1,000,000, but, rather, was the initiation of discussions that may have resulted in amendment of the existing policy or purchase of a new policy. Consequently, any claim of negligent failure to procure insurance in this case must necessarily fail as a matter of law, and appellees were entitled to summary judgment on that claim.
 {¶ 28} Appellants' complaint also set forth as causes of action claims of breach of fiduciary duty and violation of the obligation of good faith. In their memorandum contra the motion for summary judgment, appellants did not address either of these causes of action, nor did they address either cause of action in their briefing here. As such, appellants have waived any error in the trial court's grant of summary judgment on those two causes of action.
 {¶ 29} Moreover, even assuming appellants' general assignment of error regarding the trial court's grant of summary judgment sufficiently places those two causes of action before us for review, appellees are entitled to judgment as a matter of law on both claims. Ohio courts have generally recognized that the relationship between an insurance agent and a client as an ordinary business relationship, not a fiduciary one. See Nichols v. Schwendeman, Franklin App. No. 07AP-433, 2007-Ohio-6602. Nothing in our review of the record supports a departure from this general rule.
 {¶ 30} Claims for breach of the obligation of good faith cannot alone as a cause of action separate from a breach of contract claim.Krukrubo, supra, citing Interstate Gas *Page 13 Supply, Inc. v. Calex Corp., Franklin App. No. 04AP-980, 2006-Ohio-638. The only contract at issue in this case was the insurance contract between Liberty Mutual and appellants, and appellants do not claim a breach of that contract.
 {¶ 31} Consequently, we sustain appellants' assignment of error regarding the trial court's grant of summary judgment on their claim of negligent misrepresentation, affirm the trial court's grant of summary judgment as to all other claims, and remand this case to the trial court for further proceedings.
Judgment affirmed in part and reversed in part; cause remanded.
PETREE and KLATT, JJ., concur.
[1] Appellees Liberty Mutual and Liberty Mutual Insurance Group do not appear to dispute that they may be held liable for any statements made by appellee Ballinger on a theory of respondeat superior. *Page 1