CARUSO, Appellant,

v.

NATIONAL CITY MORTGAGE COMPANY et al., Appellees.

[Cite as *Caruso v. Natl. City Mtge. Co.*, 187 Ohio. App.3d 329, 2010-Ohio-1878.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–090433.

Decided April 30, 2010.

**330**

Ivan L. Tamarkin, for appellant.

Vorys, Sater, Seymour & Pease, L.L.P., and Kent A. Britt, for appellee National City Mortgage Company.

Reminger Co., L.P.A., and Robert W. Hojnoski, for appellees Elizabeth Louis Hopf and Empire Real Estate Solutions.

---

DINKELACKER, Judge.

## I. Facts and Procedure

{¶ 1} Plaintiff-appellant, William A. Caruso, filed suit against defendants-appellees, National City Mortgage Company, Elizabeth Louis Hopf, and Empire Real Estate Solutions, relating to a failed real estate investment. The trial court granted summary judgment in favor of appellees on all of Caruso's claims. He has filed a timely appeal from that judgment.

{¶ 2} The record shows that Caruso was a licensed real estate agent and a savvy real estate investor. His investment strategy, acquired from years of working in the real estate business, involved purchasing the first home built in a newly developed subdivision. Generally, no negotiation occurred, and he would purchase the home at a "take it or leave it" price set by the developer. He would then lease the home back to the developer to use as a model home. After the developer no longer needed the model home, Caruso would sell it at a profit.

{¶ 3} Caruso had purchased several homes from Ryan Homes. He heard from a former associate that a home was available in Ross Estates, one of Ryan Homes' new developments, and he acted quickly to buy it. He arranged for a purchase agreement within a few days, and he did not look at the property beforehand. An employee of Ryan Homes told him the price, which he knew from experience was not negotiable, and the monthly rental that Ryan Homes would pay him for leasing the model home. Based on his experience, he felt that the price was fair, and he calculated that his expected monthly rental income would exceed his monthly mortgage obligations.

{¶ 4} Caruso expected that this property would continue to provide income for several years based upon his estimation that Ryan Homes would build between 50 and 200 homes in the Ross Estates over a span of approximately four to six years. He also assumed that Ryan Homes would build similar homes and sell them at similar prices.

{¶ 5} In January 2006, Caruso executed a contract to purchase the home, located at 2305 Ross Estates Drive, for $441,435. Ryan Homes also agreed to lease back the property for one year. Both agreements were similar to documents Caruso had previously signed when buying other Ryan homes.

{¶ 6} Caruso applied for financing from National City. He worked with loan officer Damon Grunenburg, with whom he had previously dealt. National City ordered an appraisal of the property from Empire. Hopf, a licensed residential appraiser who worked for Empire, performed the appraisal. She concluded that the property had a value of $442,000. She completed her report in May 2006 and sent it to National City. National City approved Caruso's loan application, and he closed on the property in July 2006.

{¶ 7} Caruso never saw the appraisal, which he now contends was improperly done. He had no contact with Empire or Hopf. According to Caruso, Grunenburg informed him on more than one occasion that the appraisal was good and that Caruso could obtain financing, even though Grunenburg had not reviewed the appraisal.

{¶ 8} Approximately six months after Caruso closed on the property, Ryan Homes notified him that it was pulling out of the Ross Estates, as well as several

other communities, due to declining market conditions and slower-than-expected sales. It also informed him that it would not renew its lease agreement on the property.

{¶ 9} In an effort to cut his losses, Caruso began examining comparable sales in the Ross Estates. He learned that Ryan Homes had been building and selling less expensive homes. He also called National City and obtained a copy of the appraisal Hopf had completed. He had his own appraisal done, which valued the house at significantly less than Hopf's appraisal. He ultimately sold the property for $326,400, after reducing his asking price by more than $100,000.

{¶ 10} Caruso filed suit, alleging in his complaint that Hopf's appraisal was performed negligently and was not completed in compliance with the appropriate professional guidelines. He set forth a cause of action for negligent misrepresentation. He also claimed that he was a third-party beneficiary of the contract between Empire and National City. National City, Empire, and Hopf filed motions for summary judgment on all of Caruso's claims, which the trial court granted.

{¶ 11} Caruso now presents two assignments of error for review. In his first assignment of error, he contends that the trial court erred in granting summary judgment in favor of National City. In his second assignment of error, he contends that the trial court erred in granting summary judgment in favor of Empire and Hopf. In both assignments of error, he argues, in part, that he presented evidence to create material issues of fact on the elements of the tort of negligent misrepresentation. We find no merit in this argument.

## II. Negligent Misrepresentation

{¶ 12} Any contract between Caruso and National City related to the terms of the loan. Caruso presented no evidence showing that a contractual relationship relating to the appraisal existed between him and National City or Empire and Hopf. The only evidence he offered consisted of citations to National City's general guidelines for the preparation of appraisals by appraisal firms. Nothing in those guidelines created a contractual relationship or created privity of contract between him and National City related to the appraisal or between him and Empire and Hopf.[1] Therefore, to recover damages, he had to rely only on the tort of negligent misrepresentation.

---

1. See *Kessler v. Totus Tuus, L.L.C.*, 185 Ohio App.3d 240, 2009-Ohio-6376, 923 N.E.2d 1160, ¶ 30; *First Bank of Marietta v. Van Olnhousen* (Sept. 21, 2000), 4th Dist. No. 99CA22; *Phelps v. PNC Bank* (Aug. 31, 2001), 1st Dist. No. C–000518, 2001 WL 992081; *Kenney v. Henry Fischer Builder, Inc.* (1998), 129 Ohio App.3d 27, 29, 716 N.E.2d 1189.

{¶ 13} Typically, a plaintiff must have a contractual relationship with a defendant to recover damages for economic loss.[2]  Under the economic-loss rule, a plaintiff who has suffered only economic loss due to another's negligence cannot recover damages.[3]

{¶ 14} One exception to this rule is set forth in Restatement of the Law 2d, Torts (1965), Section 552.  It states, "One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information."[4]

{¶ 15} Liability is limited to the loss suffered (1) "by the person or one of a limited group of persons for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply" and (2) "through reliance upon it in a transaction that he intends the information to influence or knows that the recipient so intends or in a substantially similar transaction."[5]

{¶ 16} Ohio law on this particular tort is far from clear.  The Ohio Supreme Court cited Section 552 of the Restatement in *Haddon View Invest. Co. v. Coopers & Lybrand,*[6] in which it adopted a similar rule for accountants.  But, as this court has observed, the Supreme Court did not "specifically adopt the Restatement in all contexts."[7]

{¶ 17} This court has also stated that "[t]he Ohio Supreme Court has not addressed whether a strictly tort-based liability would apply to appraisers.  Several appellate courts in Ohio have held that a tort-based liability for economic damages can apply to an appraiser who provides an inaccurate appraisal to a lender or purchaser, despite the absence of privity of contract between the parties."[8]  We went on to state that "this court has interpreted the holding in

---

2.  *Trustcorp Mtge. Co. v. Zajac,* 1st Dist. No. C–060119, 2006-Ohio-6621, 2006 WL 3690299, ¶ 11.

3.  *Corporex Dev. & Constr. Mgt., Inc. v. Shook, Inc.,* 106 Ohio St.3d 412, 2005-Ohio-5409, 835 N.E.2d 701, ¶ 6; *Trustcorp Mtge.,* supra, at ¶ 12.

4.  See *Floor Craft Floor Covering, Inc. v. Parma Community Gen. Hosp.* (1990), 54 Ohio St.3d 1, 6, 560 N.E.2d 206; *Trustcorp Mtge.,* supra, at ¶ 14–15.

5.  *Floor Craft,* supra, at 6; *Trustcorp Mtge.,* supra, at ¶ 16–18.

6.  (1982), 70 Ohio St.2d 154, 156–159, 24 O.O.3d 268, 436 N.E.2d 212.

7.  *Kenney,* supra, at 30, 716 N.E.2d 1189.

8.  (Footnote omitted.) *Trustcorp Mtge.,* supra, at ¶ 23.

*Haddon View* narrowly, and we have exercised restraint in expanding tort-based economic-loss liability to professionals other than accountants."[9]

{¶ 18} Thus, it is not clear that the tort even applies in this case, although we need not reach that issue. Caruso did not demonstrate that a genuine issue of material fact existed on a crucial element of the tort—justifiable reliance. The record shows that Caruso did not rely on the appraisal in deciding to purchase the property.

{¶ 19} Caruso was a sophisticated purchaser. When he found out that the home was available, he acted quickly to buy it because of competition between buyers to acquire those types of properties. He agreed to buy the home at a price he knew to be nonnegotiable and that he believed, based on his experience, to be fair. He also agreed to buy it long before the appraisal even occurred. Generally, when a purchaser has signed a contract to buy the property before the appraisal report is prepared, "he will be hard pressed to demonstrate that he relied in any manner on the appraisal."[10]

{¶ 20} Caruso claimed in his deposition that he had relied on the appraisal, even though he had not seen it until several months after he closed on the home. When pressed to explain his statement, he stated, "I depend on the appraisal to help me, assist me with the market value and make sure that I'm not making a * * * bad deal." But Caruso had agreed that the nonnegotiable price was fair, long before an appraisal existed.

{¶ 21} When asked if "there is anything written into your contracts with Ryan Homes that said the purchase is contingent upon an appraisal, an appraised value," he replied that he did not know if it was in the contract or "just a blanket statement," but that it was a "financing contingency, which has an appraisal as a subset of financing." But this would only have been relevant if he had been denied financing. It had no relationship to the home's value and whether he would have purchased the home.

{¶ 22} We find no issues of material fact. Construing the evidence most strongly in Caruso's favor, we hold that reasonable minds can come to but one conclusion—that Caruso did not rely on the appraisal in purchasing the property. Consequently, National City, Empire, and Hopf were entitled to judgment as a matter of law on Caruso's claims for negligent misrepresentation. Consequently,

---

9. Id. at ¶ 35.

10. *Washington Mut. Bank v. Smith*, 11th Dist. No. 2001–L–238, 2002-Ohio-6910, 2002 WL 31812944, ¶ 27. See also *Rece v. Dominion Homes, Inc.*, 10th Dist. No. 07AP–295, 2008-Ohio-24, 2008 WL 73707, ¶ 29–35; *Phelps,* supra.

the trial court did not err in granting summary judgment in their favor on those claims.[11]

### III. Third–Party Beneficiary

{¶ 23} Caruso also contends that he was a third-party beneficiary of the contract between National City and Empire. Only a party to a contract or an intended third-party beneficiary may claim rights under a contract.[12] For a person to be an intended third-party beneficiary, the contract must have been entered into directly or primarily for the benefit of that person.[13] An incidental or indirect benefit to the third party is not sufficient to provide the third party with a cause of action.[14]

{¶ 24} Nothing in the contract or any other documents supports Caruso's claim that the appraisal was intended to benefit him. To the contrary, the contract expressly provided that the "intended use of this appraisal is for the lender/client (National City) to evaluate the property that is the subject of this appraisal for a mortgage finance transaction."

{¶ 25} Again, we find no issues of material fact. Construing the evidence most strongly in Caruso's favor, reasonable minds can come to but one conclusion—that Caruso was not a third-party beneficiary of the contract between National City and Empire. Therefore, National City, Empire, and Hopf were entitled to judgment as a matter of law, and the trial court did not err in granting summary judgment in their favor on that claim.[15]

{¶ 26} The trial court did not err in granting summary judgment in favor of National City, Empire, and Hopf on all of Caruso's claims. We overrule his two assignments of error and affirm the trial court's judgment.

Judgment affirmed.

HILDEBRANDT, P.J., and MALLORY, J., concur.

---

**11.** *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 O.O.3d 466, 364 N.E.2d 267; *Greene v. Whiteside*, 181 Ohio App.3d 253, 2009-Ohio-741, 908 N.E.2d 975, ¶ 23; *Stinespring v. Natorp Garden Stores* (1998), 127 Ohio App.3d 213, 215, 711 N.E.2d 1104.

**12.** *Grant Thornton v. Windsor House, Inc.* (1991), 57 Ohio St.3d 158, 161, 566 N.E.2d 1220; *Sony Electronics, Inc. v. Grass Valley Group, Inc.*, 1st Dist. Nos. C–010133 and C–010423, 2002-Ohio-1614, 2002 WL 440749.

**13.** *Ramminger v. Archdiocese of Cincinnati*, 1st Dist. No. C–060706, 2007-Ohio-3306, 2007 WL 1859556, ¶ 16.

**14.** *Grant Thornton*, supra, at 161, 566 N.E.2d 1220; *Sony Electronics*, supra.

**15.** See *Temple*, supra, at 327, 4 O.O.3d 466, 364 N.E.2d 267; *Greene*, supra, at ¶ 23; *Stinespring*, supra, at 215, 711 N.E.2d 1104.