BURLINGTON INSURANCE COMPANY

v.

ARTISAN MECHANICAL, INC., Appellant; Wells Fargo
Insurance Services of Ohio, L.L.C., et al., Appellees.

[Cite as *Burlington Ins. Co. v. Artisan Mechanical,
Inc.*, 188 Ohio App.3d 560, 2010-Ohio-3142.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–081280.

Decided July 7, 2010.

Taft Stettinius & Hollister L.L.P., and Timothy Pepper, for appellant.

Katz Teller Brant & Hild, L.P.A., and James M. McCarthy, for appellee Wells Fargo Insurance Services of Ohio, L.L.C.

Frost Brown Todd L.L.C., and David W. Walulik, for appellee CRC Insurance Services, Inc.

_____

J. HOWARD SUNDERMANN, Judge.

{¶ 1} Defendant/third-party plaintiff-appellant Artisan Mechanical, Inc., appeals from the trial court's entry granting summary judgment to third-party defendants-appellees, Wells Fargo Insurance Services of Ohio, L.L.C., and CRC Insurance Services, Inc., on its claim for negligent misrepresentation. For the reasons that follow, we affirm the summary judgment entered for CRC Insurance Services, but we reverse the summary judgment entered for Wells Fargo Insurance Services.

### I. The Lawsuit

{¶ 2} The underlying lawsuit between the parties stemmed from a complaint Burlington Insurance Company had filed against Artisan for the insurance premiums due under two separate insurance policies. Artisan filed an answer and counterclaims against Burlington. It then filed a third-party complaint against its insurance broker, Wells Fargo, and wholesale-insurance broker CRC. Artisan asserted claims for negligence, breach of fiduciary duty, fraudulent misrepresentation, negligent misrepresentation, and indemnification against Wells Fargo and claims for fraudulent and negligent misrepresentation against CRC.

{¶ 3} After discovery was completed, Wells Fargo and CRC moved for summary judgment against Artisan. Artisan filed a combined memorandum opposing the motions for summary judgment. Both Wells Fargo and CRC filed a reply memorandum. The trial court subsequently granted Wells Fargo's and CRC's motions without any analysis. Shortly thereafter, the trial court also granted Burlington's motion for summary judgment against Artisan. On appeal, Artisan challenges only the trial court's entry of summary judgment on its negligent-misrepresentation claims against Wells Fargo and CRC.

### II.  Events Giving Rise to Artisan's Negligent–Misrepresentation Claims

{¶ 4} Viewed in a light most favorable to Artisan, as the nonmoving party, the facts for purposes of summary judgment are as follows: In the summer of 2004, Artisan sought to obtain a commercial general-liability policy to replace a policy that was set to expire on September 1, 2004. As a result, it contacted its long-time agent, Gloria Davis, an account executive at Wells Fargo, for assistance. Artisan told Davis that it wanted a policy with a price structure rated on its

payroll instead of its sales, because of the variable costs of goods passed through to its customers. Davis understood that Artisan did not care how the price structure was labeled as long as it did not pay an inflated premium due to the cost of the goods it sold.

{¶ 5} Davis and her colleague Bob Grigas, also of Wells Fargo, contacted wholesale-insurance broker CRC for assistance in finding such a policy. Davis and Grigas told CRC that they were working on Artisan's behalf. All of Davis and Grigas's communications about Artisan took place with Terry McCann, a senior vice president at CRC. At some point, Wells Fargo and CRC focused their efforts on Burlington Insurance. CRC had a direct relationship with Burlington. Burlington communicated with CRC. CRC then communicated with Wells Fargo. And Wells Fargo then communicated with Artisan.

{¶ 6} According to Davis, she and Grigas told Artisan that Burlington had agreed to label the policy as one rated on "sales," with the understanding that Burlington was using a method of calculating "sales" such that the final cost would be the amount that Artisan desired to pay. Because Artisan's previous policy had been a "payroll-rated" policy, Burlington had purportedly agreed to calculate the price of its policy by subtracting four categories of goods expenses from Artisan's gross sales for the purpose of substantially replicating the price of Artisan's previous "payroll-rated" policy.

{¶ 7} More specifically, Davis testified that she and Grigas had defined the term "sales" in connection with the premium to Artisan because that was where the four price points had come from. Davis testified, "We all—Terry McCann, Bob Grigas, and I discussed what the definition of sales is. We then communicated that to Artisan who said, well the concern I have is that I'm going to get double billed. The cost of the pipe, I do something to it, I sell it again, I'm going to get hit for duplicate sales. So, that would then have been communicated back to Terry who supposedly communicated it back to Burlington."

{¶ 8} Davis further testified about a copy of an email that Bob Grigas had sent to Artisan's owner, Abbe Sexton, which stated that the premium of $30,000 was "in concrete." Davis testified that the statement was Grigas's "assurance to Abbe that the thirty thousand dollar number which is what Artisan had paid historically was going to continue to be the number she paid for general liability insurance." Sexton additionally testified that based upon this email and her prior conversations with Davis and Grigas, Artisan had believed that it was entering into an agreement with Burlington to purchase the commercial general-liability policy at an agreed-upon price, subject to an audit that would confirm the numbers used to determine that price, based upon the definition of "sales" that had been communicated to Artisan. It was not until Burlington performed the

audit that Artisan discovered that there was allegedly no agreement with Burlington similar to what Wells Fargo and CRC had represented.

### III. Artisan's Negligent–Misrepresentation Claims

{¶ 9} In its sole assignment of error, Artisan argues that the trial court erred by granting summary judgment to Wells Fargo and CRC on its claims for negligent misrepresentation.

{¶ 10} We review the trial court's decision on a summary-judgment motion de novo. Summary judgment is appropriate when "(1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, the conclusion is adverse to that party." [1]

### A. Economic-Loss Doctrine

{¶ 11} Artisan first argues that Wells Fargo and CRC were not entitled to summary judgment on the basis that its negligent-misrepresentation claims were barred by the economic-loss doctrine.

{¶ 12} The parties agree that Artisan's premium payments represented economic losses. This court has held that the absence of privity of contract requires dismissal of a negligent-misrepresentation claim for economic loss. [2] Because CRC had no contractual privity with Artisan, but instead dealt strictly with Wells Fargo, CRC was entitled to summary judgment on Artisan's negligent-misrepresentation claim against it. But because the record demonstrates that Wells Fargo had a special relationship with Artisan akin to privity, the economic-loss doctrine did not bar the negligent-misrepresentation claim against it.

### B. Expert Testimony

{¶ 13} Artisan next argues that expert testimony was not required to establish the standard of care that Wells Fargo owed to Artisan because its negligent-misrepresentation claim did not present a difficult or complex allegation of wrongdoing. We agree.

---

1. *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 O.O.3d 466, 364 N.E.2d 267.

2. *Trustcorp Mtge. Co. v. Zajac*, 1st Dist. No. C–060119, 2006-Ohio-6621, 2006 WL 3690299, at ¶ 36; see also *Caruso v. Natl. City Mtge. Co.*, 187 Ohio App.3d 329, 2010-Ohio-1878, 931 N.E.2d 1167, at ¶ 12.

{¶ 14} There is no blanket rule requiring expert testimony against an insurance broker in all cases.[3] While Wells Fargo has cited a number of cases that have held that expert testimony is required in cases involving insurance agents, those cases are distinguishable from the case before us. For example, in *Associated Visual Communications v. Erie Ins. Group,*[4] the plaintiff's negligence claims rested on a very specific allegation about "whether $75,000 in coverage was sufficient [to establish a duty and] whether any such duty was breached."[5] This question was not a simple one, and its resolution depended on matters that were not within the knowledge of laypersons.

{¶ 15} And in *Nichols v. Schwendeman,*[6] there was an allegation that the agent had "breached a duty by failing to procure replacement UIM coverage and/or by failing to advise appellants about such coverage."[7] Although the court in *Nichols* acknowledged that the parties had raised an issue regarding the need for expert testimony, it did not address the matter further and decided the case on other grounds.[8]

{¶ 16} In this case, Artisan alleged that Wells Fargo, an insurance broker, had owed it an easily understood duty to use reasonable care when communicating about the facts of the premium calculation. That duty was not dependent on any special standard applicable to the insurance industry; it was a generally recognized duty inherent in the tort of negligent misrepresentation. Whether Wells Fargo exercised reasonable care in the context of the negligent-misrepresentation claim against it posed a question of fact that a jury was fully capable of deciding on its own, without the need for expert assistance.[9] As a result, we agree with Artisan that Wells Fargo was not entitled to summary judgment due to a lack of expert testimony.

## C. Failure to Read Insurance Policy

{¶ 17} Artisan next argues that its negligent-misrepresentation claims were not barred by its failure to read the insurance policy. We agree.

---

3. See *Thompson v. Ohio Fuel Gas Co.* (1967), 9 Ohio St.2d 116, 118, 38 O.O.2d 294, 224 N.E.2d 131, quoting 2 Harper & James, Law of Torts (1986) 966, Section 17.1.

4. 5th Dist. No. 2006 CA 00092, 2007-Ohio-708, 2007 WL 520316.

5. Id. at ¶ 63.

6. 10th Dist. No. 07AP–433, 2007-Ohio-6602, 2007 WL 4305718.

7. Id. at ¶ 23.

8. Id.

9. *C & R, Inc. v. Liberty Mut. Fire Ins. Co.,* 10th Dist. No. 07AP–633, 2008-Ohio-947, 2008 WL 600147, at ¶ 20.

{¶ 18} While Ohio courts have held that insureds have a duty to read their insurance policies and that their failure to do so bars any claims regarding coverage or the contents of the policies,[10] we hold those cases to be factually distinguishable from the matter before us. Here, the entire basis for Artisan's negligent-misrepresentation claim against Wells Fargo was that Wells Fargo had told Artisan that there was an agreement with Burlington regarding the definition of "sales." Nothing in the policy addressed the word "sales" or contradicted the alleged agreement that Artisan claimed Wells Fargo had negligently misrepresented to have existed. Thus, we agree with Artisan that summary judgment on this basis was inappropriate.

### D. Factual Representations

{¶ 19} Finally, we agree with Artisan that Wells Fargo was not entitled to summary judgment on the negligent-misrepresentation claim against it on the basis that Wells Fargo's representations were not actionable because (1) they were not representations of fact, but opinions on how to construe an insurance policy,[11] and (2) they were related to future events.[12]

{¶ 20} Based upon our review of the record, we conclude that Artisan produced evidence showing that Wells Fargo had made very clear misrepresentations regarding whether an agreement existed with Burlington on how the term "sales" was to be defined. That was not an opinion on how a term might be interpreted, but was rather a clear, affirmative statement that an agreement existed at the time that the statement was made. Artisan did not allege that the misrepresentation by Wells Fargo related to whether Burlington would audit it. Because Artisan's negligent-misrepresentation claim was based on statements regarding the present existence of an agreement and the definition of the material term "sales," summary judgment for Wells Fargo was inappropriate on the grounds that it had only expressed opinions related to future events.

### IV. Well Fargo's Cross–Assignment of Error

{¶ 21} Wells Fargo has raised one assignment of error that we address pursuant to App.R. 3(C)(2) and R.C. 2505.22.[13] Wells Fargo argues that it was

---

10. See, e.g., *Roberts v. Maichl*, 1st Dist. No. C–040002, 2004-Ohio-4665, 2004 WL 1948718, at ¶ 18; *Rose v. Landen*, 12th Dist. No. CA2004–06–066, 2005-Ohio-1623, 2005 WL 752431, at ¶ 16.

11. *Indiana Ins. Co. v. Midwest Maintenance* (S.D.Ohio 2001), 174 F.Supp.2d 678, 681.

12. *Kondrat v. Morris* (1997), 118 Ohio App.3d 198, 207, 692 N.E.2d 246.

13. See *Cincinnati Gas & Elec. Co. v. Joseph Chevrolet*, 153 Ohio App.3d 95, 2003-Ohio-1367, 791 N.E.2d 1016, at ¶ 12.

not liable for Artisan's payment of the audited premium because Artisan had failed to provide Burlington with the necessary documentation that would have reduced the audited premium.[14] Wells Fargo contends that repeated requests were made to Artisan's agent of record, Neace Lukens, to provide an explanation for any dispute that Artisan had with the audit.

{¶ 22} But based upon our review of the record, we are convinced that genuine issues of material fact remain on this issue. Artisan's agent, Gloria Davis, who had moved from Wells Fargo to Neace Lukens, testified that she had repeatedly requested information from both Wells Fargo, her former employer, and from CRC as to the four price points to be included within the definition of sales, that the requests were appropriate because she had been permitted to bring the Artisan file to Neace Lukens after leaving Wells Fargo's employ, but that both CRC and Wells Fargo had refused to cooperate with her efforts to obtain the information for Artisan. As a result, we overrule Wells Fargo's cross-assignment of error.

## V. Conclusion

{¶ 23} In conclusion, we sustain Artisan's assignment of error regarding the trial court's entry of summary judgment for Wells Fargo on the claim of negligent misrepresentation, but we affirm the trial court's entry of summary judgment to CRC on Artisan's negligent-misrepresentation claim against it. This case is remanded to the trial court for further proceedings on the negligent-misrepresentation claim against Wells Fargo consistent with this decision and the law.

> Judgment affirmed in part
> and reversed in part,
> and cause remanded.

HENDON, P.J., concurs.

CUNNINGHAM, J., concurs in part and dissents in part.

CUNNINGHAM, Judge, concurring in part and dissenting in part.

{¶ 24} I agree with my colleagues that CRC was entitled to summary judgment on Artisan's negligent-misrepresentation claim, but for a different reason than the one advanced by the majority. And I would affirm the trial court's entry of summary judgment for both Wells Fargo and CRC on the basis that Artisan failed to show that there was a genuine issue of material fact for a jury to

---

14. See *Craggett v. Adell Ins. Agency* (1993), 92 Ohio App.3d 443, 453, 635 N.E.2d 1326.

consider on the existence of the necessary elements of its negligent-misrepresentation claim against each of them.

{¶ 25} Artisan's negligent-misrepresentation claim was based upon 3 Restatement of the Law 2d, Torts (1965), Section 552, which the Ohio Supreme Court adopted in *Haddon View Invest. Co. v. Coopers & Lybrand.*[15] That section provides the following:

{¶ 26} "One [who in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest,] supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information." [16]

{¶ 27} The majority holds that CRC was entitled to summary judgment on Artisan's negligent-misrepresentation claim because it was not in privity of contract with Artisan, based upon this court's holding in *Trustcorp. Mtge. Co. v. Zajac.*[17] But privity of contract is not a prerequisite to liability under Section 552. In *Corporex Dev. & Constr. Mgt. Inc. v. Shook, Inc.*, the Ohio Supreme Court clarified that liability imposed under this section is "based exclusively upon [the] pre-existing duty in tort and not upon any terms of a contract or rights accompanying privity." [18] "*Corporex* thus makes clear that although tort claims are generally barred by the economic loss doctrine, the discrete tort generally referred to as negligent misrepresentation is not." [19] And while a number of courts have held that negligence claims by insureds against their insurance brokers for failure to produce coverage were barred by the economic-loss

---

**15.** (1982), 70 Ohio St.2d 154, 24 O.O.3d 268, 436 N.E.2d 212.

**16.** See id. at 156, fn. 1.

**17.** *Trustcorp*, 2006-Ohio-6621, 2006 WL 3690299, at ¶ 1 and 6.

**18.** 106 Ohio St.3d 412, 2005-Ohio-5409, 835 N.E.2d 701, at ¶ 9; see also *McCarthy, Lebit, Crystal & Haiman Co. L.P.A. v. First Union Mgt., Inc.* (1993), 87 Ohio App.3d 613, 631, 622 N.E.2d 1093 (holding that "[a]doption of the 'economic loss' rule in *Floor Craft [Floor Covering, Inc. v. Parma Community Gen. Hosp. Assn.* (1990), 54 Ohio St.3d 1, 3, 560 N.E.2d 206,] does not necessarily preclude recovery in the instant case since Section 552 specifically provides that damages are recoverable for negligent misrepresentation made by those who have a pecuniary interest in a transaction").

**19.** See *J.F. Meskill Ent., L.L.C. v. Acuity* (2006), N.D.Ohio No. 05–CV–2955, 2006 WL 903207; see also *HDM Flugservice v. Parker Hannifin Corp.* (C.A.6, 2003), 332 F.3d 1025, 1032; *Long v. Time Ins. Co.* (S.D.Ohio 2008), 572 F.Supp.2d 907, 912; *Potts v. Safeco Ins. Co.*, 5th Dist. No. 2009 CA 0083, 2010-Ohio-2042, 2010 WL 1839738, at ¶ 21.

doctrine, they have also held that negligent-misrepresentations claims against the brokers were not.[20]

{¶ 28} Here, Artisan asserted negligent-misrepresentation claims against insurance brokers CRC and Wells Fargo. Since the Ohio Supreme Court has recognized that the economic-loss doctrine does not apply to such claims, I cannot agree with that part of the majority opinion that upholds the summary judgment entered for CRC on the basis that Artisan's claim for negligent misrepresentation was barred by the economic-loss doctrine.

{¶ 29} I also disagree with the majority's conclusion that Artisan presented sufficient evidence to withstand Wells Fargo's motion for summary judgment. As I have stated earlier, I would affirm the trial court's entry of summary judgment to both Wells Fargo and CRC on the basis that Artisan failed to show that there were genuine issues of material fact for a jury to consider on the existence of the necessary elements of its negligent-misrepresentation claim asserted against each of them.

{¶ 30} One of those elements is a misrepresentation of a material fact. Artisan failed to produce evidence that the claimed misrepresentations by Wells Fargo and CRC concerned a past or present fact. Ohio courts, including this one, have held that a promise of future conduct is not a statement of fact capable of supporting a claim for fraudulent or negligent misrepresentation.[21]

{¶ 31} Here, Artisan only identified misrepresentations that were made by Wells Fargo and CRC concerning how Burlington was to calculate the premium in a future audit. Under the express terms of Artisan's insurance policy with Burlington, the audit would not occur until the expiration of the policy. Thus, any agreement or understanding regarding how sales would be defined in that future audit necessarily related to a future event, not to an existing or past fact.

{¶ 32} Finally, Artisan failed to present any evidence that it justifiably relied on any misrepresentations that were made about the definition of the term "sales" in the insurance policy.[22] Abbe Sexton, Artisan's owner, admitted during her deposition that she had received the insurance policy, read the contract, and

---

**20.** *Potts* at ¶ 25.

**21.** See *Schuster Elec. Co. v. Hamilton Cty. Stores, Inc.* (1939), 61 Ohio App. 331, 334–335, 15 O.O. 222, 22 N.E.2d 582; *Tibbs v. Natl. Homes Constr. Corp.* (1977), 52 Ohio App.2d 281, 287, 6 O.O.3d 300, 369 N.E.2d 1218; *Williams v. Edwards* (1998), 129 Ohio App.3d 116, 124, 717 N.E.2d 368; *Telxon Corp. v. Smart Media of Delaware,* 9th Dist. Nos. 22098 and 22099, 2005-Ohio-4931, 2005 WL 2292800, at ¶ 33; *Isaac v. Alabanza Corp.,* 7th Dist. No. 05 JE 55, 2007-Ohio-1396, 2007 WL 901596, at ¶ 55.

**22.** See, e.g., *Trepp L.L.C. v. Lighthouse Commercial Mtge., Inc.,* 10th Dist. Nos. 09AP–597 and 09AP–850, 2010-Ohio-1820, 2010 WL 1664901, at ¶ 19–23.

expressly noted to Wells Fargo that the policy did not contain the limitation on the definition of sales that had been previously discussed. She asked Wells Fargo to obtain a letter from Burlington that clarified the definition. When no letter was forthcoming, she nonetheless bound the insurance and accepted the policy without that written commitment.

{¶ 33} Furthermore, when Wells Fargo delivered the insurance policy to Artisan, it provided a cover letter to Artisan that described an adjustable rate for the policy. The policy itself contained a deposit-rate endorsement that clearly stated that the $30,000 premium was a "deposit only premium" and that, "[u]pon expiration of the policy, we will compute the earned premium by applying to the composite rate shown above the actual amount of the exposure units as developed by final audit divided by the number shown in the Exposure Description." Despite this language, Artisan accepted the policy and did not cancel.

{¶ 34} Because Artisan failed to identify a genuine issue of material fact as to the essential elements of its negligent-misrepresentation claims, I would affirm the trial court's entry of summary judgment to CRC and Wells Fargo on this basis.